STATE OF NORTH CAROLINA v. JOHN WALKER McDONALD

No. COA01-888

(Filed 2 July 2002)

**1. Evidence; Motor Vehicles— driving while impaired—blood test—motion in limine—motion to suppress**

The trial court did not abuse its discretion in a second-degree murder, assault with a deadly weapon inflicting serious injury, driving while impaired, failure to stop at a stop sign, driving left of center, and consumption of alcohol by an individual less than twenty-one years of age case by denying defendant's motion in limine and motion to suppress the results of a blood test even though defendant's blood sample was left in a box in an officer's patrol car for three days before being tested, because: (1) the accuracy of the analysis is what is at issue as opposed to the status of the blood sample itself; (2) the evidence presented at trial showed the State followed the guidelines set forth in N.C.G.S. § 20-139.1; (3) there was no question of a mistake or an

incorrect administration of the blood testing of the sample of defendant's blood; (4) there was evidence that the effect of the blood being left in the car for three days, if any, was that the alcohol content would evaporate and actually lower the alcohol concentration, which would be to defendant's benefit; and (5) the uncertainty regarding the effect of leaving the samples in the patrol car for three days goes to the weight of the evidence.

2. **Homicide— second-degree murder—malice—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of second-degree murder at the close of all evidence based on alleged insufficient evidence of malice, because there was substantial evidence of malice by driving in such a reckless manner including: (1) defendant had previously been convicted of consuming alcohol while under the age of twenty-one; (2) defendant knew his conduct at the time of the accident was illegal; (3) defendant was driving without looking at the road in order to pick up a lit cigarette he had dropped; (4) defendant's truck literally flew across the intersection; (5) defendant's blood-alcohol level was almost twice the legal limit; and (6) although defendant was not cited for speeding, defendant drove at 55 mph without looking at the road.

3. **Motor Vehicles— driving while impaired—appreciable impairment—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of driving while impaired at the close of all the evidence based on alleged insufficient evidence that defendant was appreciably impaired, because: (1) impaired driving can be proved by either showing appreciable impairment or showing an alcohol concentration of 0.08 or more; and (2) defendant's alcohol concentration at a relevant time after driving was 0.156.

Appeal by defendant from judgment entered April 2001 by Judge Knox V. Jenkins, Jr. in Lee County Superior Court. Heard in the Court of Appeals 25 April 2002.

*Roy Cooper, Attorney General, by Isaac T. Avery, III, Special Deputy Attorney General, and Patricia A. Duffy, Assistant Attorney General, for the State.*

*R. Allen Lytch, PA, by Marshall L. Miller for defendant-appellant.*

STATE v. McDONALD

[151 N.C. App. 236 (2002)]

THOMAS, Judge.

Defendant, John Walker McDonald, appeals from convictions of second-degree murder, assault with a deadly weapon inflicting serious injury, driving while impaired, failure to stop at a duly erected stop sign, driving left of center, and consumption of alcohol by an individual less than twenty-one years of age.

Among the assignments of error, he argues blood test results should be suppressed because the blood sample was left in a patrol car for three days prior to analysis. For the reasons discussed herein, we find no error.

The facts are as follows: On 14 September 2000, defendant was operating a Nissan pickup truck in Sanford, North Carolina. He had earlier consumed four to five beers and stopped at a convenience store to purchase cigarettes. As he resumed driving, he dropped a lit cigarette on the floor, bent down to retrieve it, and ran a stop sign. His truck then struck a vehicle operated by Zelma Rose Collins. She was instantly killed and her ten year-old son, Samuel, sustained a laceration on his leg.

Defendant and Samuel were rushed to the hospital while Trooper L.R. Barrett of the North Carolina Highway Patrol examined the scene of the accident. He noted there were no skid marks on the road. Barrett found considerable debris in and around the defendant's pickup truck, including beer cans.

Barrett and another trooper, Tim Bolduc, went to the hospital to continue the investigation. Noticing that defendant had glassy eyes and an odor of alcohol, Bolduc read defendant his *Miranda* rights. Barrett then asked defendant if he would agree to give a blood sample. Defendant agreed and signed a consent form. The drawn blood was given to Barrett, who placed it in a box in his patrol car. He left it there for three days.

The blood sample was eventually logged in six days after the collision at the State Bureau of Investigation laboratory. It was analyzed on 28 September 2000 and revealed an alcohol concentration of 0.156.

Defendant was indicted for second-degree murder, assault with a deadly weapon inflicting serious injury, driving while impaired, driving after consuming while under the age of twenty-one, failure to stop at a stop sign, and driving left of center. His motion to suppress the

STATE v. McDONALD

[151 N.C. App. 236 (2002)]

results of the blood test was denied. Defendant was subsequently found guilty of all the offenses and was sentenced to a consolidated term of 125 to 159 months with an additional 12 months for the DWI conviction to run concurrently. Defendant appeals.

[1] By defendant's first assignment of error, he contends the trial court erred in denying his motion *in limine* and motion to suppress the results of the blood test because they were irrelevant, too prejudicial, and unreliable. We disagree.

The scope of appellate review of an order suppressing evidence is strictly limited. *State v. Cooke*, 306 N.C. 132, 291 S.E.2d 618 (1982). This Court must determine whether the trial judge's findings of fact are supported by competent evidence. *Id.* Factual findings which are supported by competent evidence are deemed binding on appeal. *Id.* "While the trial court's factual findings are binding if sustained by the evidence, the court's conclusions based thereon are reviewable *de novo* on appeal." *State v. Parker*, 137 N.C. App. 590, 594, 530 S.E.2d 297, 300 (2000).

In the instant case, the trial judge found, *inter alia*, that: (1) Barrett read defendant his rights concerning a blood sample; (2) defendant voluntarily agreed to submit a blood sample; (3) a registered nurse drew blood from defendant while he was on a stretcher at the hospital; (4) Barrett left the sample in his patrol car for three days, although Highway Patrol regulations require that blood samples not be left in a car for more than one hour; (5) the blood sample was registered at the SBI lab six days after it was drawn; (6) a test done on the sample revealed an alcohol concentration of 0.156; (7) the lab technician testing the blood testified that he could not give an opinion of what effect leaving the blood in the patrol car would have on the results of the test; (8) there is no evidence that the SBI tests were done improperly; and (9) the results of the blood test when the blood was left in the patrol car for that amount of time goes to the weight of the evidence, rather than to its admissibility. The trial court concluded that the motion to suppress should be denied.

Blood test evidence is admissible if the following can be shown: (1) compliance with conditions as to relevancy in point of time; (2) tracing and identification of the specimen; (3) accuracy of the analysis; and (4) qualification of the witness as an expert in the field. *Robinson v. Life & Casualty Ins. Co. of Tenn.*, 255 N.C. 669, 672, 122 S.E.2d 801, 803 (1961). *See also Bare v. Barrington*, 97 N.C. App. 282, 388 S.E.2d 166, *rev. denied*, 326 N.C. 594, 393 S.E.2d

873 (1990). Evidence which is not relevant is inadmissible. N.C. R. Evid. 402.

Defendant contends the issue here is whether the specimen is viable. That, he says, is a prerequisite for the analysis to be accurate as to the alcohol content. He argues the State failed to lay a proper foundation for the admissibility of the blood test results because it did not show that the condition of defendant's blood had not changed before it was tested. The State, however, asserts the issue is whether the sample was accurately analyzed. The State contends it only had to comply with statutory guidelines for blood tests set forth in N.C. Gen. Stat. § 20-139.1, which provides:

(a) Chemical Analysis Admissible.—In any implied-consent offense under G.S. 20-16.2, a person's alcohol concentration or the presence of any other impairing substance in the person's body as shown by a chemical analysis is admissible in evidence. . . .

(b) A chemical analysis, to be valid, shall be performed in accordance with the provisions of this section. The chemical analysis shall be performed according to methods approved by the Commission for Health Services by an individual possessing a current permit issued by the Department of Health and Human Services for that type of chemical analysis. . . .

(c) Withdrawal of Blood for Chemical Analysis.—When a blood test is specified as the type of chemical analysis by the charging officer, only a physician, registered nurse, or other qualified person may withdraw the blood sample. . . .

(e) Recording Results of Chemical Analysis of Breath.—The chemical analyst who administers a test of a person's breath shall record the following information after making any chemical analysis:

(1) The alcohol concentration or concentrations revealed by the chemical analysis.

(2) The time of the collection of the breath sample or samples used in the chemical analysis.

A copy of the record of this information shall be furnished to the person submitting to the chemical analysis, or to his attorney, before any trial or proceeding in which the results of the chemical analysis may be used.

N.C. Gen. Stat. § 20-139.1 (2001). In fact, the accuracy of the analysis is what is at issue as opposed to the status of the blood sample itself. *See Robinson v. Life & Casualty Ins. Co. of Tenn.*, 255 N.C. 669, 672, 122 S.E.2d 801, 803 (1961).

The evidence presented at trial showed the State followed the guidelines set forth in section 20-139.1, which is titled: "Procedures governing chemical analyses; admissibility; evidentiary provisions; controlled-drinking programs." Further, there was no question of a mistake or an incorrect administration of the blood testing of the sample of defendant's blood. Defendant offered no evidence that the blood had been tainted, not drawn by a professional, or incorrectly labeled. Additionally, there was evidence that the effect of the blood being left in the car for three days, if any, was that the alcohol content would evaporate and actually lower the alcohol concentration, to defendant's benefit. The burden to show improper admission of evidence is on the party claiming it; he must show both error and prejudice. *State v. Gappins*, 320 N.C. 64, 357 S.E.2d 654 (1987). Moreover, our review of the trial court's admission of totally unreliable evidence is abuse of discretion. *State v. Cardwell*, 133 N.C. App. 496, 516 S.E.2d 388 (1999).

In *State v. Bundridge*, 294 N.C. 45, 58, 239 S.E.2d 811, 820 (1978), our Supreme Court held that the absence of a chemical analysis of bloodstains found on clothing goes to weight of the evidence rather than its admissibility. More recently, this Court held that:

> An experiment must be made under substantially similar circumstances to those existing at the time of the occurrence with which the action is concerned, and the results of the experiment must have a logical tendency to prove or disprove an issue arising out of that occurrence . . . . However, substantial similarity is sufficient, and a lack of complete similarity goes to the weight, not the admissibility, of the testimony. . . . If differences of condition are such as will not cause confusion and can be explained in such a way that the trier of fact may reasonably evaluate their effect, then the trial court may, in its discretion, properly allow the evidence.

*Robinson v. Seaboard System R.R., Inc.*, 87 N.C. App. 512, 529-30, 361 S.E.2d 909, 920 (1987), *rev. denied*, 321 N.C. 474, 34 S.E.2d 294 (1988) (citations omitted). Here, all the evidence pointed to an uncertainty regarding the effect of leaving the samples in the patrol car for three days. That uncertainty goes to the weight of the evidence.

In fact, most discrepancies regarding blood testing under the *Robinson* factors go to the weight of the evidence, not to its admissibility. *State v. Miller,* 80 N.C. App. 425, 342 S.E.2d 553, *dismissal all'd, rev. denied,* 317 N.C. 711, 347 S.E.2d 448 (1986); *State v. George,* 77 N.C. App. 470, 336 S.E.2d 93 (1985), *dismissal all'd, rev. denied,* 316 N.C. 197, 341 S.E.2d 581 (1986). In *State v. George,* this Court held that as to relevancy in point of time, one of the *Robinson* factors, the fact that three hours passed from the time defendant operated the motor vehicle until the Breathalyzer test for alcohol content was given goes to the *weight* to be given the results of the test, rather than to its admissibility, despite the argument that the test was not given at a relevant time after driving, citing N.C. Gen. Stat. § 20-139.1(b). *See generally, Swanson v. State,* 545 S.E.2d 713 (Ga. App. 2001); *People v. Hoffman,* 725 N.Y.S.2d 494 (N.Y.A.D. 2001); *Durrett v. State,* 36 S.W.3d 205 (Tex. App. 2001); *Dansby v. State,* 1 S.W.3d 403 (Ark. 1999).

The State has the burden of proving the admissibility of the blood test under the *Robinson* factors. Defendant has the burden of proving the trial court erred in admitting the blood test by showing prejudice and error under *Gappins.* Given facts and the evidence before the court, we cannot say defendant carried his burden and that the facts were not supported by competent evidence. Because factual findings supported by competent evidence are binding on appeal, we reject defendant's argument and hold that the trial court did not err in denying defendant's motion *in limine* and motion to suppress.

[2] By defendant's second assignment of error, he argues the trial court erred by denying his motion to dismiss the charge of second-degree murder at the close of all the evidence because the State failed to present substantial evidence of malice. We disagree.

A motion to dismiss is properly denied if "there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense." *State v. Lynch,* 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Franklin,* 327 N.C. 162, 171, 393 S.E.2d 781, 787 (1990). "When ruling on a motion to dismiss, all of the evidence should be considered in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence." *State v. Davis,* 130 N.C. App. 675, 679, 505 S.E.2d 138, 141 (1998).

The elements of second-degree murder are: (a) an unlawful killing; (b) of a human being; (c) with malice, but without premeditation and deliberation. *State v. Miller*, 142 N.C. App. 435, 543 S.E.2d 201 (2001). Defendant contends the State did not show substantial evidence of malice.

Our Supreme Court has defined "malice" in the following manner:

[Malice] "does not necessarily mean an actual intent to take human life; it may be inferential or implied, instead of positive, as when an act which imports danger to another is done so recklessly or wantonly as to manifest depravity of mind and disregard of human life." In such a situation "the law regards the circumstances of the act as so harmful that the law punishes the act as though malice did in fact exist."

*State v. Wilkerson*, 295 N.C. 559, 578-79, 247 S.E.2d 905, 916 (1978) (citations omitted). In *State v. Rich*, 351 N.C. 386, 395, 527 S.E.2d 299, 304 (2000), our Supreme Court held that the State, in order to prove malice, needed only to prove that defendant had the intent to drive in a reckless manner which would reflect the knowledge that injury or death would likely occur, evidencing a depravity of mind.

In the instant case, the State showed that defendant admitted that: (a) he had previously been convicted of consuming alcohol while under the age of twenty-one; (b) he knew his conduct at the time of the accident was illegal; (c) he was driving without looking at the road in order to pick up a lit cigarette he had dropped; and (4) his truck literally flew across the intersection. Defendant's blood-alcohol level was almost twice the legal limit. Although he was not cited for speeding, defendant drove at 55 mph without looking at the road. Thus, there was substantial evidence of malice by driving in such a reckless manner. Accordingly, we reject defendant's argument.

[3] By defendant's final assignment of error, he argues the trial court erred by denying his motion to dismiss the charge of driving while impaired at the close of all the evidence because the State failed to present any evidence that defendant was appreciably impaired. We disagree.

Again, a motion to dismiss is properly denied if "there is substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense." *State v. Lynch*, 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990). Defendant contends the element of "appreciable impairment" was not proven.

In *State v. Coker*, 312 N.C. 432, 440, 323 S.E.2d 343, 349 (1984), our Supreme Court noted that there are two ways to prove the single offense of impaired driving: (1) showing appreciable impairment; or (2) showing an alcohol concentration of 0.08 or more. *See* N.C. Gen. Stat. § 20-138.1 (1999). Here, the clear evidence is that defendant's alcohol concentration at a relevant time after driving was 0.156. The trial court did not err in denying defendant's motion to dismiss. We therefore find no error.

NO ERROR.

Judges MARTIN and TYSON concur.