TYSON, Judge, dissenting.
The State does not challenge any of the findings of fact contained in the trial court's order. These unchallenged findings of fact support the trial court's conclusion of law that Trooper Berrong did not possess probable cause to arrest Defendant for driving while impaired ("DWI").
The State's appeal challenges only the trial court's conclusion, granting Defendant's motion to suppress the evidence obtained subsequent to his arrest for DWI. The majority's opinion concludes probable cause existed to support Defendant's DWI arrest, reverses the trial court's order and remands for further proceedings. I vote to affirm the trial court's order and respectfully dissent.
I. Background
On the morning of 11 June 2016, N.C. Highway Patrol Trooper Joe Berrong was stationary at the Windy Gap exit of Highway 421 in Wilkes County. Trooper Berrong was monitoring traffic coming from Winston-Salem towards Wilkesboro and running stationary radar in order to detect speeding drivers. Trooper Berrong observed a Chevrolet sport utility vehicle coming down the highway and clocked the vehicle's speed at 80 miles per hour in a 65 mile per hour zone.
Trooper Berrong activated his vehicle's lights and siren and pursued the vehicle northbound on Highway 421. As Trooper Berrong approached, the vehicle was traveling in the left-hand lane. When Trooper Berrong drew closer, Defendant abruptly moved out of his way into the right-hand lane and nearly struck another vehicle. Trooper Berrong managed to place his vehicle behind Defendant's vehicle, which had pulled over and stopped on the shoulder of Highway 421.
*338 Trooper Berrong approached the vehicle and noticed a moderate odor of alcohol emanating from the driver and observed an open 24-ounce container of beer inside the cup holder next to the driver. Defendant was the *621 driver, admitted he had just purchased the beer and was drinking it while driving down the road. Defendant also stated he had also drank heavily the previous night, but had not consumed very much that day.
Trooper Berrong requested Defendant to exit his vehicle. Trooper Berrong stated he still detected a moderate odor of alcohol emanating from Defendant after he exited his vehicle. Trooper Berrong did not ask Defendant to perform any of the standard field sobriety tests, but did request Defendant to submit to two alco-sensor alcohol screening tests. Defendant agreed and both tests yielded positive results for alcohol.
Based upon his observations of Defendant, Defendant's speeding and the manner in which Defendant had operated his vehicle, Trooper Berrong formed an opinion that Defendant had consumed a sufficient quantity of alcohol to impair Defendant's physical or mental faculties or ability to safely operate a vehicle. Defendant was placed under arrest for DWI and issued citations for speeding 80 miles per hour in a 65 mile per hour zone and for driving with an open container of alcohol. Trooper Berrong transported Defendant to the local courthouse where Defendant was administered an intoximeter test.
On 23 February 2017, Defendant pled guilty to all charges in Wilkes County District Court. The district court sentenced Defendant to 60 days imprisonment and suspended the sentence to twelve months of unsupervised probation. Defendant then entered notice of appeal to superior court for a trial de novo .
On 29 March 2017, Defendant filed a pre-trial motion to suppress evidence and asserted lack of probable cause for his arrest. Following a hearing on the motion, the superior court entered an order allowing Defendant's motion to suppress. The State filed timely notice of appeal to this Court.
II. Standard of Review
"The standard of review for a motion to suppress is whether the trial court's findings of fact are supported by the evidence and whether the findings of fact support the conclusions of law." State v. Wainwright , 240 N.C. App. 77, 83, 770 S.E.2d 99, 104 (2015) (internal quotation marks and citation omitted). "[I]n evaluating a trial court's ruling on a motion to suppress ... the trial court's findings of fact are conclusive on appeal *339 if supported by competent evidence, even if the evidence is conflicting." State v. Allen , 197 N.C. App. 208, 210, 676 S.E.2d 519, 521 (2009) (citation omitted). Findings of fact not challenged on appeal are deemed supported by competent evidence and are binding upon this Court. State v. Biber , 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011) (citation omitted). "The trial court's conclusions of law ... are fully reviewable on appeal." State v. Hughes , 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).
III. Analysis
The State does not challenge any of the trial court's findings of fact in the order granting Defendant's motion to suppress. These findings are based upon competent evidence and are binding upon appeal. Biber , 365 N.C. at 168, 712 S.E.2d at 878.
With regard to the trial court's conclusions of law, the State argues that the trial court erred in granting Defendant's motion to suppress. It asserts the totality of the circumstances indicate Trooper Berrong had probable cause to arrest Defendant for DWI. Whether Trooper Berrong lacked probable cause to arrest Defendant for DWI and whether the trial court properly granted Defendant's motion to suppress must be reviewed in light of the trial court's unchallenged findings of fact.
A. Probable Cause
"Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." State v. Teate , 180 N.C. App. 601, 606-07, 638 S.E.2d 29, 33 (2006) (quoting Illinois v. Gates , 462 U.S. 213, 244 n. 13, 103 S.Ct. 2317, 2335 n. 13, 76 L.Ed. 2d 527, 552 n. 13 (1983) ). "Probable cause exists if the facts and circumstances at that moment [that are] within the charging officer's knowledge[,] and of which the officer had reasonably trustworthy information[,] are such that a prudent man would believe that the suspect had committed or was committing an offense." Moore v. Hodges , 116 N.C. App. 727, 730, 449 S.E.2d 218, 220 (1994) (citation omitted).
*622 "Whether probable cause exists to justify an arrest depends on the 'totality of the circumstances' present in each case." State v. Sanders , 327 N.C. 319, 339, 395 S.E.2d 412, 425 (1990) (citations omitted), cert. denied , 498 U.S. 1051, 111 S.Ct. 763, 112 L.Ed. 2d 782 (1991).
B. Unchallenged Findings of Fact
Here, the trial court made the following unchallenged findings of fact:
*340 1. On June 11, 2016, at approximately 9:30 a.m., Trooper Joe Berrong with the N.C. Highway Patrol was sitting stationary on the Windy Gap exit of Highway 421 in Wilkes County, North Carolina, watching traffic on Highway 421 for speeding and was running stationary radar. At this time, Trooper Berrong had worked for the Highway Patrol for approximately 14 years and had worked as a law enforcement officer for 19 years with at least 100 arrests for driving while impaired.
2. Trooper Berrong clocked the Defendant traveling at an estimated 80 mph in a 65 mph zone on Highway 421. The Trooper activated his lights and siren and pursued the Defendant.
3. When Trooper Berrong caught up to the Defendant, the Defendant was driving in the left lane. Trooper Berrong pulled up behind the Defendant with lights and sirens activated, then the Defendant made a sharp cut into the right-hand lane and cut off another vehicle nearly striking the other vehicle. Trooper Berrong followed the Defendant into the right hand lane and then the Defendant pulled off onto the shoulder at or near the next exit off of Highway 421 towards the rest area where he stopped.
4. Less than one minute passed from the time that Trooper Berrong started pursuit of the Defendant until the Defendant stopped.
5. Trooper Berrong was alerted to the Defendant's vehicle based on his speed.
6. Other that [sic] the Defendant's speed and his sharp turn into the right hand lane nearly striking another vehicle, Trooper Berrong did not notice anything else unusual or illegal about the Defendant's operation of his vehicle. It was described as 'a straight up speeding stop'.
7. When Trooper Berrong approached the Defendant's car, he noticed a moderate odor of alcohol coming from the Defendant's breath and an open container of alcohol, an Ice House beer, in the Defendant's car. The Defendant was the sole occupant of the vehicle.
8. The Defendant told Trooper Berrong that he drank heavily the night before and that he had not drank much *341 of the open container of alcohol, but what he had drank of the open container he drank while coming up the road.
9. Trooper Berrong was unable to recall what was done with the container, the temperature of the container or how much was in it. It was unknown when the Defendant bought the beer other than sometime that morning or how long the Defendant had been on the road. Defendant was on the way to Boone to work on his house.
10. Trooper Berrong requested the Defendant to get out of the vehicle and the Defendant complied with that request. They walked back to Trooper Berrong's patrol car and the Defendant sat in the patrol car with Trooper Berrong. Trooper Berrong observed there was nothing unusual about the Defendant's gait. In the patrol car, Trooper Berrong still noticed a moderate odor of alcohol coming from the Defendant's person.
11. On June 11, 2016, Trooper Berrong was certified to use the intoximeter FST alcohol screening device which was assigned to him by the Highway Patrol. This alcohol screening device had been calibrated and was working properly.
12. Trooper Berrong asked the Defendant to submit to an alcohol screening test and the Defendant complied. Trooper Berrong administered the first test at 9:36 a.m. and the second test at 9:42 a.m. and both tests yielded a positive result. The Trooper's notes did not include the FST to determine alcohol.
13. Trooper Berrong did not other present [sic] evidence of performance on standardized field sobriety tests. Trooper Berrong felt that the location of the vehicle stop *623 was not practical to administer field sobriety tests. Specifically, the shoulder was uneven, very rough, and only partially paved. The Defendant stopped between the Windy Gap Road exit (exit 277) and the NC-115 exit (exit 282). A rest area was located approximately one mile past the NC-115 exit.
14. Trooper Berrong formed an opinion that the Defendant had consumed a sufficient amount of alcohol to impair the Defendant's physical and/or mental faculties.
*342 15. The Defendant was arrested for driving while impaired. Trooper Berrong issued a citation to the Defendant for speeding 80 mph in a 65 mph zone and for driving with an open container of alcoholic beverage after drinking.
16. During the entire time that Trooper Berrong was interacting with the Defendant, the Defendant was polite, cooperative, and respectful to the Trooper.
17. Trooper Berrong observed the Defendant try to cover up the open container of alcohol before the Defendant got out of his car, but this did not affect Trooper Berrong's opinion that the Defendant was being very cooperative.
18. The Defendant did not have red glassy eyes or any slurred speech. Trooper Berrong was able to communicate with the Defendant clearly.
19. Trooper Berrong did not notice anything unusual about the Defendant's ability to walk, stand or maintain his balance.
C. The State's Argument
The State asserts Trooper Berrong had probable cause to arrest Defendant because he had sufficient knowledge to believe Defendant had committed or was committing the offense of DWI. The State argues, and the majority's opinion agrees, the totality of the circumstances supports a conclusion that Trooper Berrong had probable cause to arrest Defendant for DWI because:
(1) he clocked Defendant traveling 15 miles over the posted speed limit;
(2) Defendant almost struck another vehicle when attempting to pull over;
(3) Defendant had a moderate odor of alcohol emanating from his person;
(4) Defendant admitted to drinking heavily the night before;
(5) Defendant had an open container of alcohol in his vehicle that he attempted to cover up;
(6) Defendant admitted to recently drinking said alcohol while driving down the road; and
(7) Defendant registered two (2) positive readings on the portable alcohol screening test.
*343 The State's argument relies in part on the case of State v. Townsend , 236 N.C. App. 456, 762 S.E.2d 898 (2014), to support its assertion that Trooper Berrong had probable cause to arrest Defendant for DWI. In Townsend , the defendant was stopped at a police checkpoint where a law enforcement officer had noticed the defendant had red, bloodshot eyes, emitted a strong odor of alcohol, and admitted to drinking several beers earlier in the evening. Id. at 458, 762 S.E.2d at 901. The officer administered two alco-sensor tests, which were positive for alcohol. Id . The officer also had the defendant perform several field sobriety tests, including a horizontal gaze nystagmus test, a "walk and turn" test, and a "one leg" stand test. Id. The defendant exhibited multiple signs of intoxication on each of those tests. Id. The defendant was arrested and later convicted of DWI. Id.
The defendant had filed a motion to suppress for lack of probable cause, which was denied by the trial court. Id. at 464, 762 S.E.2d at 904. On appeal, the defendant argued that because he did not exhibit signs of intoxication such as slurred speech, glassy eyes, or physical instability, there was insufficient probable cause for his arrest. Id. at 465, 762 S.E.2d at 905. This Court concluded there was probable cause because "[the officer] noted that defendant had bloodshot eyes, emitted an odor of alcohol, exhibited clues as to intoxication on three field sobriety tests, and gave positive results on two alco-sensor tests." Id.
The facts here are distinguishable from those in Townsend . The defendant in *624 Townsend exhibited several signs of intoxication, in addition to the two positive alco-sensor results, odor of alcohol, and admission of consuming alcohol prior to driving. These additional signs included bloodshot eyes and indications of intoxication from the three administered standard field sobriety tests. Id. at 458, 762 S.E.2d at 901. In the instant case, although Defendant admitted to consuming alcohol, had an open container of beer in his vehicle, and emanated a moderate odor of alcohol, these were the only indications tending to show he could be impaired or intoxicated.
While Defendant's speeding and abrupt change of lanes may support probable cause to support the citation for speeding, these actions and the other observations of Trooper Berrong, do not support probable cause that Defendant's mental or physical faculties were "appreciably impaired" or that he had a "[blood] alcohol concentration of 0.08 or more." State v. McDonald , 151 N.C. App. 236, 244, 565 S.E.2d 273, 277 (2002) ; see also N.C. Gen. Stat. § 20-138.1(a) (2017).
According to the trial court's unchallenged and binding findings of fact in the order granting Defendant's motion to suppress, Trooper *344 Berrong initiated the stop solely based upon Defendant's speeding. Trooper Berrong did not observe anything unusual about Defendant's driving in addition to speeding, except his abrupt merging into the right-hand lane to pull over. Neither Defendant's speed nor his abrupt move into the right-hand lane in response to Trooper Berrong driving up behind him with activated lights and sirens tend to show probable cause that Defendant was driving while impaired.
Significantly, Trooper Berrong did not observe anything that would indicate probable cause of appreciable impairment or a .08 blood alcohol concentration or greater intoxication in Defendant's gait, manner of speaking or appearance. Additionally, Defendant acted politely, cooperatively, responsively and respectfully during their interaction. Also, and unlike the defendant in Townsend , Defendant was not asked to perform any standard field sobriety tests and did not have bloodshot eyes. See id.
As the fact finder, the trial court had the opportunity to observe all witnesses and their demeanor. The trial court's unchallenged findings of fact are based upon the competent evidence in the record. These findings support its conclusion that the totality of the circumstances did not provide probable cause for Trooper Berrong to arrest Defendant for DWI. See Sanders , 327 N.C. at 339, 395 S.E.2d at 425. The order of the trial court should be affirmed.
IV. Conclusion
Under the totality of the circumstances and the unchallenged findings of fact, the trial court properly concluded that Trooper Berrong lacked sufficient probable cause to arrest Defendant for DWI. The trial court's unchallenged and binding findings of fact support its conclusions of law.
The State failed to show Trooper Berrong possessed probable cause to support Defendant's arrest for DWI or carry its burden to overcome the presumption of correctness of the trial court's order on appeal. The order of the trial court granting Defendant's motion to suppress is properly affirmed. For these reasons, I respectfully dissent.